## 50368. KROGER COMPANY v. BONNY CORPORATION.

ARGUED FEBRUARY 26, 1975 — DECIDED APRIL 22, 1975 —
REHEARING DENIED MAY 15, 1975 —

*Hansell, Post, Brandon & Dorsey, Gary W. Hatch,* for appellant.
*Alex McLennan, Scott Hogg,* for appellee.

DEEN, Presiding Judge.

1. The lease is on a printed form of Kroger Co. and contains an initial stipulation that it is "at a rental of $2,253 per month payable in advance by tenant." A typed

paragraph at the end of the lease further states: "Tenant agrees to pay to landlord a sum of money equal of 1% of its sales in excess of of $2,704,000 per year, hereinafter called the minimum sales base" along with stipulations for figuring time and sales. A modification agreement dated in July, 1961, refers to the lease as "primarily covering a food store located at Chamblee Plaza Shopping Center," a fact not in dispute. A typed provision of the original lease guarantees that the lessor will not permit more than one other retail grocery store (to be occupied by Colonial Stores) and a delicatessen primarily interested in the sale of prepared foods in competition with the tenant. The lease at the time of the alleged breach had been in effect some thirteen years, for the first 12 of which sales were not in an amount sufficient to invoke the percentage rental clause denominated "additional rent." During the last year increasing sales resulted in an additional payment of $4,688.73 above the stipulated minimum. The question at issue is whether there is fairly to be implied a covenant on the part of the lessee to continue in business at the location stated throughout the lease period. The lease also includes a warranty by the lessor that the entire shopping center will be properly built and maintained. The only language restricting the tenant's occupancy is found in paragraph 8: "Tenant will use said premises in a lawful manner." Paragraph 31 specifically states that "the provisions of this lease shall bind and inure to the benefit of the parties hereto, their heirs . . . successors, and assigns."

We first consider the lease in the absence of aliunde evidence as to the intention of the parties to see whether the provisions as written are ambiguous, and whether they indicate a duty on the part of the tenant to continue in business for the duration of the leasehold. The lease is for more than five years, contains no provisions against assignment, and states that it shall bind the assigns of *both* parties. Certainly it must be considered, prima facie, as being assignable. See *Warehouses, Inc. v. Wetherbee,* 203 Ga. 483 (5, 6) (46 SE2d 894). This in itself weighs against an implied intent to require the tenant to continue in business throughout the term of the lease. The trial court correctly held the lease to be assignable. There

is a strong implication in paragraph 8 that the tenant's use of the premises is not limited so long as it is conducted in a lawful manner. Nor do we find from the landlord's covenant not to place more than one competing grocery store in the mall (although this shows an implied understanding that Kroger was in fact intending to use the space for this purpose) any implied covenant on the part of *Kroger* to so use the space for the full term of the lease; a contrary inference might be drawn from the fact that an obligation in the area of competition is placed on one party but omitted on the part of the other. Considered without regard to aliunde facts, the lease places no burden on the tenant to occupy the premises, so long as the rent is paid. Nothing to the contrary is held in Daitch Crystal Dairies v. Neisloss, 8 AD2d 965 (190 NYS2d 737), which has to do only with the obligation of the *landlord* under such circumstances. Nor can a contrary conclusion be reached from *Buford-Clairmont v. Jacobs Pharmacy,* 131 Ga. App. 643, 646 (206 SE2d 674), stating that "in a shopping center such as existed here, tenants actively operate their business as a part of a whole enterprise," where the statement is drawn from application of a lease provision not present in this instrument that the tenant shall not "abandon or vacate the leased premises during the term." Again, while it is true that the landlord, as an inducement to the tenant at the time of signing the lease, agreed that if a minimum amount of footage in the shopping center was not rented when the premises became ready for occupancy the tenant had an option to cancel, and while such language does suggest that substantial occupancy is important to the success of the area, there is no equivalent suggestion that the tenant has a corresponding obligation to *keep* the demised premises occupied. The lease must be read in the light of what is omitted as well as what is required.

2. In attempting, however, to arrive at the true intention of the parties in entering into the contract, the court properly took into consideration the composition of the shopping center as a whole, the content of the leases entered into with other tenants, and the rental payments made over the years. From this it appears that the plan of the shopping center included four major stores and

another two dozen small ones offering varied commodities. Of the major tenants, defendant was charged the most per square foot, at a rate which the landlord testified was "the basic standard thirteen years ago when the lease was negotiated." Colonial Stores first paid sales-percentage rent in the thirteenth year, the other two have never done so. Kroger's lease differs from Colonial's in that the latter may not use the premises for any purpose except that of a supermarket without written consent of lessor; Kroger covenants only that its purposes are lawful. The leases of most of the smaller tenants contain a provision that "lessee agrees not to abandon or vacate leased premises during the period of this lease" but none of the four primary tenants are so bound. The landlord does not contend that any of the lease provisions at issue are the result of fraud, mistake, inadvertence or a custom so universal as to be assumed on both sides. We may well assume, as pointed out in *Buford-Clairmont,* supra, that both parties understood the needs and purposes of shopping centers, the importance of representation, diversification, and substantial capacity rentals. Nevertheless, the present landlord and its assignor dealt with multiple leasings and multiple requirements. They were not overreached. They limited certain tenants to particular sales areas and not others; they required covenants against vacancy and abandonment of certain tenants and not of others. The leases were executed around the same time; it is therefore perfectly obvious that the landlord, in its individual dealings with separate tenants, tailored the leases according to the exigencies of the situation.

Does the formula for determination of rent require that the tenant not cease his business activities on the property? See 38 ALR2d, Anno. p. 1113 et seq., construction and application of provision in lease under which landlord is to receive percentage of lessee's profits or receipts. The general rule is, as there abstracted from Cousins Invest. Co. v. Hastings Clothing Co., 45 Cal. App. 2d 141 (113 P2d 878), and Masciotra v. Harlow, 105 Cal. App. 2d 376 (233 P2d 586), that "covenants would be implied only where the implication must arise from the language used or was indispensable to effectuate the

intention of the parties, and that when the rental to be received under a lease is based on a percentage of the gross receipts of the business, with a substantial minimum, there is no implied covenant that the lessee will operate its business in the leased premises throughout the term of the lease." 38 ALR2d Anno. 1115, 1116. See also Hicks v. Whelan Drug Co., 131 Cal. App. 2d 110 (280 P2d 104); Food Fair Stores v. Blumberg, 234 Md. 521, 200 A2d 166; Stop & Shop, Inc. v. Ganem, 347 Mass. 697 (200 NE2d 248); Tuttle v. W. T. Grant Co., 5 AD2d 370 (171 NYS2d 954); Kretch v. Stark (Ohio) 92 Abs. 47 (193 NE2d 307); Weil v. Ann Lewis Shops, Inc., (Tex. Civ. App.) 281 SW2d 651. In both *Sinclair Refining Co. v. Davis,* 47 Ga. App. 601 (171 SE 150) and *Sinclair Refining Co. v. Giddens,* 54 Ga. App. 69 (187 SE 201) premises outfitted as a service station were rented for a designated sum of money per gallon of gasoline sold, with a stipulation that minimum rental would be not less than $10 per month. The cases indicate that this minimum was substantially below contemplated performance, and was therefore not "substantial." In the present instance two of the four main tenants have never increased sales so as to come within the "additional rent" base. Not only was Kroger's stipulated rent admitted to be a fair market value return at the time of the lease; the increase in the thirteenth year was a little over 1/6, or, if averaged over the period of lease up to that time, barely over 1% per year. The base rent was clearly stated at the beginning of the lease; the "additional rent" was a contingency without qualification added by paragraph 26. The *Sinclair Refining Co.* cases and the present one are at opposite ends of the spectrum.

Ingannamorte v. King Supermarkets, 55 N. J. 223 (260 A2d 841) and Lilac Variety, Inc. v. Dallas, Texas Co., (Tex Civ. App.) 383 SW2d 193 were cited by the trial court for the proposition that Kroger's presence in the shopping centrex might well be a factor in attracting business there, which is true, but these cases did not involve percentage rentals. The former involved a lease covenant for the store "to be used and occupied only for a supermarket" and the latter involved a commitment to a third party tenant as to the use of remaining property. In Slidell Investment Co., Inc. v. City Products Corp., (La.

App.) 202 S2d 323, which otherwise supports the appellee's position, the base rental was only slightly over half of the total rental during occupancy, and this, with other particulars, caused the court to hold "that this lease agreement would not have been entered into had plaintiff not anticipated receipt of percentage rental." We do not reach the same conclusion under the facts of the case here. Carter v. Adler, 138 Cal. App. 2d 63 (291 P2d 111) holds that landlords who induced the lease by granting tenants exclusive handling of certain foods within the supermarket could not themselves compete on adjacent property. In Professional Bldg. of Eureka v. Anita Frocks, Inc., 178 Cal. App. 2d 276 (2 Cal. Rep. 914), the percentage rent formula was used as a criterion, and amounted to over 50%. Again, that case had an "exclusive occupancy and use" clause. Somewhat the same situation adheres in Simhawk Corp. v. Egler, 52 Ill. App. 2d 449 (202 NE2d 49). The tenant agreed to use the premises only for sale of shoes (breached when he ceased operations and moved to a store two doors away) and the percentage rental was at least equal to the base rent.

The lease under consideration, considered either singly or in connection with other evidence regarding the operation of the shopping center, placed no obligation on the tenant to continue the operation of a supermarket on the premises for the full term of the lease. Accordingly, the appellee landlord would not be entitled to damages so long as the minimum rent continued to be paid.

*Judgment reversed. Bell, C. J., Quillian, Clark, Stolz, Webb and Marshall, JJ., concur. Pannell, P. J., and Evans, J., dissent.*

EVANS, Judge, dissenting.

Bonny Corporation owned a shopping center, and it leased to Kroger Company one of its largest units for a period of 15 years, with renewal options. The lease was on a printed form supplied by Kroger Company, providing for rental at the rate of $2,253 per month. At the end of the printed form there was a *typed paragraph* which stated: "Tenant agrees to pay to landlord a sum equal to 1% of its sales in excess of $2,704,000 per year hereinafter called the minimum sales base." During the last year of

occupancy prior to Kroger's moving out, the amount paid on such gross sales to Bonny was $4,688.73, in addition to the $2,253 per month. But in December, 1973, Kroger moved out and opened another store in a new shopping center a mile and a half away, and contended that it no longer owed any rent except the $2,253 per month; and that as it was no longer operating a store in the shopping center, the typed part of the lease contract as to payment of 1% of gross sales in excess of $2,704,000 per year was null and void.

The question here is whether the tenant could avoid payment of the rental stipulated to be paid, including $2,253 per month, *plus 1% of gross sales in excess of $2,704,000 per year*. Kroger contended it had the right to vacate the premises before the termination of the lease, so long as it paid the $2,253 per month.

1. The contract was provided by Kroger, and any ambiguity or doubtful part therein must be construed most strongly against Kroger. *Benevolent Burial Assn. Inc. v. Harrison,* 181 Ga. 230, 239 (181 SE 829); *Howkins v. Atlanta Baggage &c. Co.,* 107 Ga. App. 38 (1) (129 SE2d 158).

2. When a contract is partly printed and partly written, the written part is entitled to most consideration. Code § 20-704 (7). Typed provisions prevail over printed matter. *Taylor v. Dunaway,* 79 Ga. App. 754, 758 (54 SE2d 381). Therefore, as to the question of whether the $2,253 per month (which was in the printed part of the contract) was of equal importance with the 1% of the gross receipts provided for (in the typed part of the contract), the typed part would be entitled to more consideration. Under no circumstances here could it be said that Bonny would have leased to Kroger but for the consideration of 1% of the gross receipts as typed at the end of the lease agreement.

3. The majority opinion cites many foreign decisions to support its contention that Kroger had no obligation to operate a store and pay 1% of the gross sales (beyond $2,704,000 per annum) to Bonny. But this court is not bound by foreign decisions. See: *Hooper v. Almand,* 196 Ga. 52, 67 (25 SE 778); *Etowah Heading Co. v. Anderson,* 73 Ga. App. 814 (38 SE2d 71); *Martin v. Henson,* 95 Ga.

App. 715, 733 (99 SE2d 251); *Thornton v. Lane,* 11 Ga. 459, 500.

This is especially true here, as we have decisions of our own state on the question. Our own decisions will not be set aside in favor of foreign authorities. In *Sinclair Refining Co. v. Davis,* 47 Ga. App. 601 (171 SE 150), it is held that where a gas and oil service station is leased for a term, the rent to be a designated sum of money per gallon on all gasoline sold, and not less than $10 per month, when the lessee stops selling gasoline, he breaches the contract. Again in *Sinclair Refining Co. v. Giddens,* 54 Ga. App. 69 (1) (187 SE 201), a similar lease was executed and this court held: ". . . it is clearly within the contemplation of the parties to the contract that the lessee *shall, during the term of the lease, operate upon the premises a service station for the sale of gasoline. . ."* (Emphasis supplied.) And his failure to do so was accounted as a breach of its lease agreement. In *Hodges v. Ga. Kaolin Co.,* 108 Ga. App. 115 (132 SE2d 86), it was shown that Hodges had leased lands to Georgia Kaolin for the purpose of mining minerals, and payment for which was to be on a royalty basis, at 15 cents per ton, later amended to 16.2 cents per cubic yard. After 1954 Georgia Kaolin "has done nothing on plaintiff's land" and Hodges sued for $167,612 principal for the kaolin "that could have been mined *from the land* but wasn't." The lower court sustained a general demurrer to petition, and this court reversed, and held that Hodges had the right to sue Georgia Kaolin for damages, and at p. 120: "Thus, where a right to mine coal or other minerals is granted in consideration of the reservation of a certain portion of the product to the grantor, *the law implies a covenant on the part of the grantee to work the mine in a proper manner and with reasonable diligence, so that the lessor or grantor will derive the income which both parties had in contemplation when the contract was entered into."* (Emphasis supplied.)

4. To uphold Kroger in moving out and leaving the store vacant, with no gross receipts, thereby defeating Bonny's right to collect the full rental contemplated by the parties in the added typed stipulation at the end of the lease, would be to allow Kroger to violate the terms of the lease at its own option, to the loss and disadvantage of

Bonny.

The lease would not have been entered had plaintiff not anticipated receipt of percentage rental. The lease does not state that defendant had to continue the operation of a supermarket on the premises for the full term of the lease, but since the lease authorized increases due to sales and the evidence showed an increase of sales, a jury question remains as to whether or not plaintiff is entitled to damages by the alleged violation of the lease since it clearly appears that rent other than the base amount shall be due. This court in construing the contract cannot re-write the contract by cutting out the percentage rental clause. This court simply cannot, and must not, decide issues of fact by weighing evidence in reviewing summary judgment cases. See *Holland v. Sanfax Corp.,* 106 Ga. App. 1, 4 (126 SE2d 442); *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178 (1) (129 SE2d 408). Clearly, jury questions remain for determination.

5. For all of the foregoing reasons, I would affirm the judgment of the lower court, and respectfully dissent from the majority opinion in this case.

I am authorized to state that Presiding Judge Pannell joins in this dissent.