**FIFTH AVENUE SHOPPING CENTER, INC.**

v.

**The GRAND UNION COMPANY as Successor in Interest to Colonial Stores Incorporated.**

**Civ. A. No. C79–67N.**

United States District Court, N. D. Georgia, Newnan Division.

June 17, 1980.

Claude A. Bray, Jr., Manchester, Ga., Scroggins, Ivy, Goodman, Weiss & Bost, Atlanta, Ga., for plaintiff.

Frank C. Jones, Ralph A. Pitts, King & Spalding, Atlanta, Ga., for defendant.

## ORDER

TIDWELL, District Judge.

The above-styled matter is presently before the court on the parties' cross motions for summary judgment as well as a motion, filed on behalf of the plaintiff, to amend the complaint. A brief review of the facts follows. The plaintiff owns and operates a shopping center in Manchester, Georgia. In 1964, the plaintiff, as lessor, and Colonial Stores Incorporated, as lessee, entered into a written agreement whereby Colonial (a grocery chain which is now a division of The Grand Union Company) leased certain space in the plaintiff's shopping center. The term of the lease was for ten years with three successive five-year renewal options and a monthly rental of $866.67, or $10,400.00 annually. The lease also contained a clause entitled "PERCENTAGE PAYMENTS" which obligated Colonial to make additional payments to the plaintiff of one per cent of the sales made from the leased premises in excess of a "minimum sales base" of $1,040,000.00. In addition, the lease contained a restrictive covenant which prevented the lessor from leasing any other premises within a three-mile radius to any competitors of Colonial. The lease was subsequently modified by the parties on five occasions, the last time being in 1973 in connection with an expansion of the leased premises by Colonial. The only substantial changes in the lease terms at issue in this case were made in the 1971 modification, which provided, in pertinent parts, that the minimum sales base would be increased to $1,500,000.00 and that there would be a fourth five-year renewal option.

Colonial operated a supermarket in plaintiff's shopping center from 1964 until 1979. (In 1974, Colonial had exercised the first five-year renewal option.) Relations between the parties were apparently amicable until sometime in 1978, when Colonial indicated that it was planning to open a new "Big Star" supermarket outside the Manchester city limits, thus causing uncertainty as to whether it would continue to operate the Manchester store. In early 1979, subsequent to the opening of the new store, Colonial informed the president of the plaintiff that it would indeed vacate the Manchester store, but that Colonial would not give up the location nor permit another grocery store to occupy the vacated premises. Although the Manchester store has been vacant since May of 1979, Colonial purportedly exercised its second renewal

option in June of that year to extend its lease term until 1984, and the defendants have continued to make annual rental payments of $10,400.00 to the plaintiff.

It has apparently always been the plaintiff's position that Colonial's actions in vacating the premises constituted a breach of the lease agreement, and consequently, that the defendants' attempt to extend the lease in June of 1979 was ineffective. When the parties were unable to resolve their differences over the matter, the plaintiff filed suit in the Superior Court of Meriwether County in July of 1979, which case was removed to this court by the defendants on the basis of diversity of citizenship. In its complaint, the plaintiff seeks damages and attorney's fees, as well as declaratory and injunctive relief. Specifically, the plaintiff alleges that it is entitled to $11,646.63 in lost percentage payments for the period commencing with the vacating of the leased premises in May of 1979 and terminating September 30, 1979, the expiration date of the first renewal period; the plaintiff requests a judgment declaring Colonial's purported exercise of the lease option in June of 1979 to be invalid; alternatively, the plaintiff requests an injunction requiring Colonial to operate a grocery store in the leased premises; if Colonial persists in its refusal to operate a grocery store there, the plaintiff claims damages in the amount of $227,319.30 to cover lost percentage payments for the five-year period commencing October 1, 1979; and finally, the plaintiff alleges that defendants are liable for reasonable attorney's fees due to their bad faith in breaching the lease agreement and attempting to tie up the property to prevent competition with their new "Big Star" store.

In its motion to amend, the plaintiff has sought to add an additional count which requests that a writ of possession issue establishing that the plaintiff is presently entitled to possession of the vacant leased premises. In addition, the plaintiff has sought to recover additional damages for the diminution in value of its shopping center due to Colonial's failure to operate a grocery store there. The proposed amended complaint also emphasizes that the 1971 Modification Agreement constitutes a mutually-negotiated departure from the terms of the original lease, and that Colonial's express or implied covenant to operate a grocery store at the leased premises arises from the 1971 modification. Because it is the court's view that allowing the plaintiff to amend his complaint in these particulars will not delay the disposition of the cross motions for summary judgment, as is discussed *infra*, and in light of the mandate found in Rule 15(a) of the Federal Rules of Civil Procedure and emphasized in *Foman v Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), that leave to amend "shall be freely given," the plaintiff's motion to amend will be granted.

In this diversity case, this court is bound to apply the substantive law of Georgia. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In their cross motions for summary judgment, both parties have relied on *Kroger Co. v. Bonny Corp.*, 134 Ga.App. 834, 216 S.E.2d 341 (1975). The defendants claim that *Kroger* is on all fours with the case at bar; the plaintiff asserts that the factual circumstances differ to such an extent that *Kroger* compels a judgment in its favor. The court reaches neither of the above conclusions.

In *Kroger, supra*, Bonny Corporation, the owner of a shopping center, and the Kroger Company, a supermarket chain, had entered into a fifteen year lease with renewal options in September, 1960. The lease provided for a rental of $2,252 per month plus " . . . 1% of [tenant's] sales in excess of $2,704,000 per year, hereinafter called the minimum sales base." *Id.* at 836, 216 S.E.2d at 342. In December of 1973, Kroger Company closed its store and opened another in a new shopping center a mile and a half away, but it continued to pay the base rent of $2,253 per month and sought to obtain a subtenant for the previous location. The lessor brought an action for an injunction and damages, claiming that the lease contained an implied covenant on the part of the lessee to continue in business at the location stated throughout the lease pe-

riod. The Georgia Court of Appeals reversed the trial court's denial of the defendant's motion for summary judgment, finding that the lease placed no obligation on the tenant to continue the operation of a supermarket on the premises for the full term of the lease, and that consequently, the landlord would not be entitled to damages so long as the minimum monthly rent was paid.

In its analysis, the appeals court in *Kroger* first considered the lease in the absence of aliunde evidence as to the intention of the parties. Within the four corners of the lease, the court found no burden placed upon the tenant to occupy the premises, and such would seem to be the situation in the case at bar. This is so notwithstanding plaintiff's argument that Paragraph 3 of the Lease Agreement, whereby "Colonial covenants not to use the premises for any illegal purpose nor in such manner as to violate any applicable and valid law, rule or regulation of any governmental body, and to *occupy and use* these premises in a careful, safe and proper manner, and not permit waste therein" (emphasis added), compels a different result, since the above-quoted provision does not differ substantially from one found in the *Kroger* lease which stated: "Tenant will use said premises in a lawful manner." *Id.* at 836, 216 S.E.2d at 343. Nor does this court find anything in the 1971 Modification Agreement which would alter this conclusion.

The Georgia Court of Appeals then indicated that although "[t]he lease must be read in the light of what is omitted as well as what is required," *Id.* at 837, 216 S.E.2d at 343, the analysis does not end there:

In attempting, however, to arrive at the true intention of the parties in entering into the contract, the [trial] court properly took into consideration the composition of the shopping center as a whole, the content of the leases entered into with other tenants, and the rental payments made over the years.

*Id.* at 837, 216 S.E.2d at 343.

The appeals court found it significant that the leases of some of the other tenants in Bonny Corporation's shopping center contained express covenants against vacancy and abandonment, while Kroger's did not; in the present case, it is undisputed that none of the leases negotiated by the plaintiff have such covenants.

More important, however, is the Georgia court's discussion of the implications which arise from the inclusion of a percentage payment rental clause in a lease. The court quoted the general rule as follows, stating that covenants would be implied only where the implication must arise from the language used or was indispensable to effectuate the intention of the parties, and that when the rental to be received under a lease is based on a percentage of the gross receipts of the business, *with a substantial minimum*, there is no implied covenant that the lessee will operate its business in the leased premises throughout the term of the lease.

*Id.* at 838–839, 216 S.E.2d at 344 (emphasis added).

The question therefore arises as to what constitutes "a substantial minimum" rent. The *Kroger* decision provides some guidelines for determining this issue by distinguishing two earlier Georgia cases, *Sinclair Refining Co. v. Davis*, 47 Ga.App. 601, 171 S.E. 150 (1933), and *Sinclair Refining Co. v. Giddens*, 54 Ga.App. 69, 187 S.E. 201 (1936). The *Sinclair* cases involved service station leases which provided for rent based upon the number of gallons of gasoline sold at the stations, with a ten dollar monthly minimum payment. Under the circumstances of those cases, it was held that a cessation of operations by the lessee constituted a breach of the lease, authorizing the lessor to rescind the contract. In its discussion of these previous decisions, the *Kroger* court stated: "The [*Sinclair*] cases indicate that this minimum [monthly rental payment] was *substantially below contemplated performance, and was therefore not 'substantial.'*" *Kroger, supra,* 134 Ga.App. at 839, 216 L.Ed.2d at 344 (emphasis added). Consequently, it appears to be the law in Georgia that if the parties to a lease contemplate that the amount of rent to be

generated by a percentage payment clause will be substantially greater than the minimum rental specified in the contract, it is possible to infer an implied covenant that the lessee will operate its business in the leased premises throughout the term of the lease.

This is borne out by the Georgia Court of Appeals' opinion in *Kroger*, which emphasized the fact that Kroger Company's sales had never been sufficiently high to generate any percentage payments in twelve out of the thirteen years that the lease had been in effect, and that the additional percentage payment of $4,688.73 "in the thirteenth year was a little over ⅙ [of the minimum rent for a year], or, if averaged over the period of lease up to that time, barely over 1% per year." *Id.* at 839, 216 S.E.2d at 344. This would indicate that the minimum rental paid by Kroger Company over the years was not "substantially below contemplated performance." By way of contrast, percentage payments were generated from the third year of occupancy onward in the case at bar, and the total of such percentage payments, if averaged over the period of the lease to date, amounts to some 43% of the total rent paid. It is also interesting to note that the *Kroger* court distinguished *Slidell Investment Co. v. City Products Corp.*, 202 So.2d 323 (La.App. 1967), *cert. denied*, 251 La. 387, 204 So.2d 572 (1967), which upheld a verdict for a plaintiff lessor under substantially similar circumstances, for the specific reason that in the Louisiana case " . . . the base rental was only slightly over half of the total rental during occupancy . . . ." *Kroger, supra,* 134 Ga.App. at 840, 216 S.E.2d at 345. The same is true in the case at bar, for it is undisputed that the total base rental of $156,000.00 ($10,400.00 over 15 years) constitutes only 57% of the total rental paid during occupancy by Colonial ($156,000.00 plus $117,866.38 in percentage payments). Under the reasoning expressed by the Georgia Court of Appeals, this gives rise to an inference that the minimum monthly rental may well have been "substantially below contemplated performance, and was therefore not 'substantial.'" *Id.* at

839, 216 S.E.2d at 344. Since the foregoing discussion indicates that the factual circumstances of the present case are sufficiently different from those in *Kroger* to preclude this court from rendering a judgment in favor of defendants as a matter of law, their motion for summary judgment will be denied.

This does not require that the plaintiff's cross motion for summary judgment be granted, however. As was previously stated, the court is presently unable to determine whether or not the original lease agreement or any of the modifications thereto exhibit an express promise by the defendants to occupy the premises. It is also apparent that the issue of whether a covenant of continuous occupancy should be implied cannot be decided except upon a plenary trial. This question, as well as that of whether the minimum rental was "substantially below contemplated performance," concerns the intention of the parties as revealed by the circumstances surrounding the inception and performance of the lease agreement and its modifications. Consequently, it appears that it will be necessary at trial to receive extrinsic proof as to the history of the relationship between the parties, their reasonable expectations, and all other factors bearing upon their intention in entering into the lease. Other issues which remain unresolved include whether the actions of the defendants constitute an unreasonable and illegal competitive restraint; whether the agreement as construed by the defendants constitutes such a grossly unconscionable arrangement so as to be unenforceable; and whether the restrictive covenant should be held to be invalid, in view of the defendants' conduct including their insistence upon the covenant's enforceability under the present circumstances. These are matters which present a factual question which cannot be decided as a matter of law, since in the instant case the lease makes no provision covering such circumstances and the intent of the parties is uncertain. *See Professional Building of Eureka, Inc. v. Anita Frocks, Inc.*, 178 Cal.App.2d 276, 279, 2 Cal.Rptr.

914, 916–917 (1960). Accordingly, the plaintiff's cross motion for summary judgment will also be denied.

In summary, the plaintiff's motion to amend the complaint is hereby granted and sustained; the defendants' motion for summary judgment and the plaintiff's cross motion for summary judgment are both hereby overruled and denied.

SO ORDERED.