E. Baxter **EVANS, et al., Plaintiffs,**

v.

The **GRAND UNION COMPANY, Defendant.**

Civ. A. No. 88-382-1-MAC(WDO).

United States District Court, M.D. Georgia, Macon Division.

Oct. 3, 1990.

Duncan D. Walker, III, Benjamin M. Garland, Hall, Bloch, Garland & Meyer, Macon, Ga., for plaintiffs.

Jeffrey W. Kelley, J. Joel Mercer, Jr., Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

Before the court are the defendant's motion for summary judgment and the plaintiffs' motion for partial summary judgment. The issues concern whether a grocery store lease, executed by the plaintiff landlords and defendant tenant Grand Union Company's ("Grand Union") predecessor in interest, Colonial Stores, Inc. ("Colonial"), imposed upon Grand Union a duty of continuous use and occupancy. After careful consideration of the briefs submitted by counsel and the record as a whole, the court makes the following findings of undisputed material facts and conclusions of law.

### Undisputed Material Facts

In August, 1975, after extensive negotiations, plaintiffs and Colonial executed a twenty-year lease for a Big Star grocery store to be located in the Summit Shopping Center, Macon, Georgia ("Big Star

Lease").[1] These negotiations included bargaining with regard to use and occupancy provisions in plaintiffs' form shopping center lease. The standard language, which appears in other leases executed by plaintiffs during the phase of Summit Shopping Center in which the Big Star Store was located, imposed upon tenants an express duty of continuous use and occupancy. The relevant language of these other leases is as follows:

> "During the term hereof, Tenant shall be in continuous use, occupancy and operation of the entire Premises and shall not vacate or abandon same." (Ex. 12; Deposition of E. Baxter Evans 10/25/89, pp. 49–54).[2]

The Big Star Lease does not include a provision identical to those in the other Summit Shopping Center leases. Rather, in ¶ 3 of the Big Star Lease, the parties agreed to the following language:

> "Colonial covenants to use and occupy the premises as a supermarket only (unless assigned or sublet) and covenants not to use the premises for any illegal purpose nor in any such manner as to violate any applicable and valid law, rule or regulation of any governmental body, and to occupy and use these premises in a clean, careful, safe and proper manner and not to permit waste therein."[3]

Pursuant to ¶ 26 of the Big Star Lease, tenant was to pay a monthly rental in the amount of $7,062.71. In addition, tenant was to pay additional rent of 1% of Big Star's adjusted gross annual sales in excess of $4,676,000.

The store was completed and occupied in September, 1976.[4] Big Star was in operation until July 18, 1987, when Grand Union closed the store because it had become unprofitable. During operational years Big Star paid additional percentage rents in the following amounts:

| | | |
|---|---|---|
| 1976–78 | $ 0.00 | ( 0%) |
| 1979–80 | $ 6,450.00 | ( 7.6%) |
| 1980–81 | $ 4,971.00 | ( 5.9%) |
| 1981–82 | $ 3,111.00 | ( 3.6%) |
| 1982–83 | $ 6,738.00 | ( 7.9%) |
| 1983–84 | $19,038.00 | (22.5%) |
| 1984–85 | $16,389.00 | (19.3%) |
| 1985–86 | $ 8,452.00 | ( 9.9%) |
| 1986–Close | $ 0.00 | ( 0%) |
| TOTAL | $65,149.00 | ( 7.7%)[5] |

As a result of the closing, Grand Union withdrew altogether from the grocery business in the Macon area. Despite efforts by both Grand Union and plaintiffs to locate a new tenant, the store space has remained unoccupied since closing in 1987. Grand Union has nonetheless continued to make the monthly base rent payment of $7,062.71.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure allows for the granting of summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. F.R.Civ.P. 56(c). Upon motion and after adequate time for discovery, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the

---

1. Plaintiff E. Baxter Evans, is an experienced local commercial realtor with what he considers to be the equivalent of a Master's degree in real estate management and marketing. Grand Union is a New Jersey based corporation with grocery stores throughout the eastern United States.

2. The court also notes other leases and intra-office memoranda executed by Baxter Evans and Company, plaintiff E. Baxter Evans' realty company, which evidence the plaintiffs' knowledge of guaranteed occupancy clauses and the effect of failure to include such language.

3. The court also notes ¶ 9 of the Big Star Lease, which outlined the tenant's ability to assign or sublease, but was silent as to any duty of continuous operation.

4. In February, 1979, Colonial was acquired and merged into Grand Union; Grand Union, then, succeeded to Colonial's interest in the Big Star Food Store at Summit Shopping Center.

5. The figures in parentheses represent the percentage of annual rent for that year generated by revenues in excess of $4,676,000. The 7.7% figure represents the percentage of total rent generated over all of the years during which the Big Star Store was operational.

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 274 (1986). A movant may discharge his burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.*, at 326, 106 S.Ct. at 2554, 91 L.Ed.2d at 275–276.

"To survive a motion for summary judgment, a plaintiff need 'only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial.' " *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988) (citations omitted).

■ In evaluating a summary judgment motion the evidence and all factual inferences must be viewed in the light most favorable to the nonmovant. *Thrasher v. State Farm Fire & Casualty Co.*, 734 F.2d 637, 638 (11th Cir.1984). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion." *Samples on Behalf of Samples*, 846 F.2d at 1330.

The issue before the court is whether the Big Star Lease imposed upon Grand Union a duty, either express or implied, of continuous use and occupancy. The court addresses the issues of express and implied duties separately.

## I. *Express Duties Under the Big Star Lease*

Plaintiffs seek partial summary judgment and argue that the Big Star Lease imposed upon Grand Union an express duty of continuous use and occupancy. Grand Union's actions in closing the Big Star Grocery Store amounted, plaintiffs argue, to a breach of the Big Star Lease. Grand Union seeks summary judgment and argues that the Big Star Lease imposed neither an express nor an implied duty of continuous use and occupancy upon them. As Grand Union has continued to pay the monthly base rent, they argue, there has been no breach of the Big Star Lease.

Plaintiffs argue that the use provision included in the Big Star Lease was intended and served adequately to impose upon Grand Union a duty of continuous use and occupancy. Again, the relevant provision states:

"Colonial covenants to use and occupy the premises as a supermarket only (unless assigned or sublet) and covenants not to use the premises for any illegal purpose nor in any such manner as to violate any applicable and valid law, rule or regulation of any governmental body, and to occupy and use these premises in a clean, careful, safe and proper manner and not to permit waste therein."

Plaintiffs state that "the record is clear that *all of the Plaintiffs* understood and intended that [this provision] meant what it said ... that is, that the premises *must be* both used and occupied as a supermarket." (emphasis added). Plaintiffs state that the provision means what it says, then appear to assign additional, different meanings to the language, simply because all of the plaintiffs shared an understanding of this additional meaning.

■ In support of an argument ostensibly based upon the express provisions of the Big Star Lease plaintiffs emphasize and rely upon the Big Star Grocery Store's status as the "anchor tenant" in the Summit Shopping Center as a basis for imposing the duty of continuous use and occupancy upon Grand Union. Such arguments are misplaced when used in support of plaintiffs' arguments that an *express* duty of continuous use and occupancy existed.[6]

■ Grand Union argues that no express continuous occupancy provisions were included in the Big Star Lease and that the included provision was little more than a covenant not to engage in illegal or improper activities while in operation. Grand Union also points to other Summit Shopping

---

**6.** Plaintiffs' arguments with regard to Grand Union's "anchor tenant" status are more suited to implied duty analysis; the court addresses itself to those arguments *infra.*

Center leases executed by the plaintiffs which evidence the plaintiffs' knowledge of and ability to draft an express continuous use and occupancy lease provision.[7] Grand Union argues that under Georgia law the Big Star Lease provision, when considered in light of the presence of express covenants of continuous use in other relevant leases, imposes no duty of continuous use and occupancy upon the tenant.

It has been held to be reversible error, under Georgia law, to impose a duty of continuous use and occupancy where a lease, when considered in light of other relevant leases, fails to expressly set out such a duty. *Kroger Company v. Bonny Corporation*, 134 Ga.App. 834, 216 S.E.2d 341 (1975). In *Kroger*, the relevant lease term stated simply: "[t]enant will use said premises in a lawful manner." *Id.*, 216 S.E.2d at 343. The analysis did not end there; the *Kroger* court stated that:

In attempting to arrive at the true intention of the parties, the trial court properly took into consideration the composition of the shopping center as a whole [and] the content of the leases entered into with other tenants. *Id.*

The content of leases entered into with smaller tenants in *Kroger* included provisions that "lessee agrees not to abandon or vacate leased premises during the period of this lease;" the court noted, however, that "none of the primary tenants [were] so bound." *Id.*, at 344. The court held that Kroger's lease placed no obligation on the tenant to continue to operate on the premises for the full term of the lease. *Id.*, at 345.

Plaintiffs rely upon wholly different propositions and sources of substantive law. In this diversity case, however, the court is bound to apply the substantive law of Georgia. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Plaintiff's only cited case applying

Georgia law with regard to the duty of continuous occupancy demonstrates the weakness of the plaintiffs' argument that an express duty of continued occupancy existed in the case *sub judice*. In *Buford Clairmont v. Jacobs Pharmacy*, 131 Ga. App. 643, 206 S.E.2d 674 (1974), the court addressed the issue of express duties of continued occupancy. However, the lease in question in *Jacobs Pharmacy* contained the following continuous occupancy provision:

"Tenant will not abandon or vacate the leased premises during the term of this Lease, or any renewal or extension thereof." *Id.*, 206 S.E.2d at 676.[8]

Plaintiffs, in the case before this court, are hard-pressed to present a convincing argument that the terms of the Big Star Lease evidence the same intent and duties reflected in, not only the *Jacobs Pharmacy* lease, but the very leases executed between the plaintiffs themselves and other tenants in the Summit Shopping Center. Plaintiff E. Baxter Evans, himself, admits that he was, at the time the Big Star Lease was executed, aware of the importance of a clause with reference to the tenant's obligation to continuously occupy the premises. Plaintiffs acknowledge, however, that Colonial's chief negotiator was opposed to a guaranteed occupancy clause. As is the case with many negotiated leases, then, the parties finally agreed upon acceptable terms.

In the case *sub judice* the negotiations resulted in the exclusion of a standard express duty of occupancy provision. The language agreed upon is substantially similar to the language used in the lease provision scrutinized in *Fifth Avenue Shopping Center v. Grand Union Company*, 491 F.Supp. 77, 80 (N.D.Ga.1980). In that case, the relevant lease provision, negotiated there, as here, by Colonial read as follows:

---

7. The court again notes other Summit tenant lease covenants which provided:

"During the term hereof, Tenant shall be in continuous use, occupancy and operation of the entire Premises and shall not vacate or abandon same." (Ex. 12; Deposition of E. Baxter Evans 10/25/89, pp. 49–54).

8. The *Kroger* court specifically distinguished the *Jacobs Pharmacy* lease from the lease presented for their consideration. *Kroger*, 216 S.E.2d at 343.

"Colonial covenants not to use the premises for any illegal purpose nor in any such manner as to violate any applicable and valid law, rule or regulation of any governmental body, and to occupy and use these premises in a clean, careful, safe and proper manner and not to permit waste therein."

The *Fifth Avenue* court found that the above language did not differ substantially from language in the lease under scrutiny in *Kroger.*

The *Fifth Avenue* case, itself, differs significantly, however, from the case before this court. The *Fifth Avenue* court in declining to grant summary judgment on the issue of whether the lease imposed an express duty of continuous use and occupancy relied specifically upon the absence of evidence, like that present in *Kroger,* that other tenants' leases included express covenants of continuous use and occupancy. *Fifth Avenue,* at 81. In the case *sub judice,* as in the *Kroger* case, the evidence demonstrates the clear presence of express covenants of continuous use and occupancy in other tenants' leases within the same shopping center.

Accordingly, as a matter of law, this court finds that the Big Star Lease imposed upon Grand Union no express duty of continuous use and occupancy.

## II. *Implied Duties Under the Big Star Lease*

Plaintiffs rely heavily upon the theory that the Big Star Lease carried an express duty of continuous operation. They appear surprisingly and dangerously willing to concede that implied duty arguments are not germane to the case *sub judice.* Nonetheless, the court now turns to the issue of whether the Big Star Lease carried an implied duty of continuous use and occupancy. The court analyzes this issue, first, based upon plaintiffs' characterization of Big Star Grocery Store as an anchor tenant, and second, taking into consideration the provision of the Big Star Lease which

assessed additional percentage rents to be paid based upon operational profits.

### A. The Big Star Store as Anchor Tenant

■ Plaintiffs emphasize the Big Star Grocery Store's status as an anchor tenant in the Summit Shopping Center. The difficulties of leasing space in the center without a thriving, operational anchor tenant are recounted at length. Plaintiffs present arguments, supported by case law from a wide range of jurisdictions, other than the State of Georgia, that as an anchor tenant Grand Union was aware of the landlords' paramount concern that Big Star remain open for business. Therefore, they argue, Grand Union had a duty of continuous use and occupancy.[9] These arguments may be representative of the business realities at work in the shopping center lease context. However, this court does not, will not, and by law cannot, presume to fashion and change the substantive state law in areas where the Georgia courts have already spoken. *See generally, Erie,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Plaintiffs argue that the Georgia courts, too, "have recognized the fact that shopping center leases are unique in that a vacant store of a major tenant in a shopping center setting harms the entire shopping center property." The plaintiffs refer to language in *Jacobs Pharmacy,* in which the court simply pointed out that a landlord would not want a vacant store even if the tenant remained solvent and paid monthly minimum rent. *Jacobs Pharmacy,* 131 Ga. App. at 646–647, 206 S.E.2d 674 (emphasis added). This dicta, which recognizes the forces at work in the business community, did not by its mere utterance rewrite Georgia's substantive law.

In fact the Georgia Court of Appeals has recently stated clearly that it was reversible error for a trial court to fashion an implied duty of continuous use and occupancy from a tenant's status as "anchor tenant." *Piggly Wiggly Southern v. East-*

9. Plaintiffs style this alleged duty as an express one, but the analysis is properly whether an

implied duty existed.

*gate Associates, Ltd.,* 195 Ga.App. 10, 392 S.E.2d 337, 340 (1990). It cannot be said that, under Georgia law, Grand Union's status as an "anchor tenant" carried with it an implied duty of continuous use and occupancy.

### B. The Effect of the Big Star Lease's Percentage Rent Provision

■ The Georgia cases which have considered leases assessing additional rents against tenants based upon operational sales have stated that when the rental to be received under a lease is based upon a percentage of the gross receipts of the business, *with a substantial minimum,* there is no implied covenant that the lessee will operate its business throughout the term of the lease. *Fifth Avenue,* at 80 (emphasis the court's) *citing Kroger,* 216 S.E.2d at 344. It appears to be the law in Georgia that if the parties to a lease contemplate that the amount of rent to be generated by the percentage payment clause will be substantially greater than the minimum monthly rent, it is possible to infer a covenant of continuous use and operation. *Fifth Avenue,* at 80–81.

■ The question, therefore, is what constitutes "a substantial minimum" rent. The *Kroger* and *Fifth Avenue* decisions provide some guidance in determining this issue. In *Kroger,* a lease set the base rent at $2,252 per month; the percentage rent was calculated at 1% of Kroger's annual sales in excess of $2,704,000. *Kroger,* 216 S.E.2d at 342. In holding that the trial court had improperly denied the defendants motion for summary judgment, the *Kroger* court distinguished cases put forward by the plaintiffs, and embraced by the trial court, which had imposed a duty of continuous use and occupancy based upon substantial percentage rental payments. *See Kroger,* 216 S.E.2d at 344–345. (Georgia Court of Appeals distinguishes cases imposing duty where base monthly rents amounted to only approximately 50% of the total rental during occupancy).

In *Fifth Avenue* the lease set base rent at only $866.67 per month, while percentage rent was assessed at 1% of revenues over $1,040,000. *Fifth Avenue,* at 81. The *Fifth Avenue* court denied the defendants' motion for summary judgment and relied upon the reasoning used by the *Kroger* court. In *Fifth Avenue,* the court emphasized the comparatively low monthly rentals and significant percentage rentals (amounting to 43% of the total rent assessed) paid by the defendants. The *Fifth Avenue* court could not, as a matter of law, find a "substantial minimum" rent was present in a lease that generated rents at a percentage level approximately *six times* greater than the Big Star Lease before this court. The Georgia Court of Appeals, again emphasizing the absence of evidence of express continuous use and occupancy provisions in other leases in that case, was unable to grant summary judgment. *Id.*

Under the present facts this court is not so constrained. While the Georgia Courts may have never embraced a specific definition of what is a sufficient percentage rent to impose a duty of continuous use and occupancy, the cases are clear with regard to what *is not* sufficient to establish such a duty. *See generally, Kroger,* 216 S.E.2d 341 (emphasis added). The Big Star Lease is substantially similar, both in construction and when considered in light of other Summit Shopping Center leases, to the lease before the Georgia Court of Appeals in *Kroger.* The Big Star Lease imposed a substantial minimum monthly rental amount and assessed additional percentage rent only when annual revenues exceeded $4.5 million. The Big Star Grocery Store generated additional rentals of only 7.7% of the total rents assessed while the store was operational, a figure which amounts to an average of less than one additional monthly base rental payment per year.

The base monthly rentals under the Big Star Lease represented a "substantial minimum" rent under Georgia law. Accordingly, this court finds that, as a matter of law, the Big Star Lease imposed upon Grand Union no implied duty of continuous use and occupancy. Plaintiffs' motion for partial summary judgment is therefore DENIED, and defendant Grand Union's mo-

tion for summary judgment is hereby GRANTED.

SO ORDERED.