## 49157. BUFORD-CLAIRMONT, INC. v. JACOBS PHARMACY COMPANY, INC.

CLARK, Judge.

This case involves determination of the rights and liabilities of a landlord-plaintiff and tenant-defendant under a twenty-year lease for a combined drug store-cafeteria location in a shopping center upon tenant vacating the premises after an occupancy of only one year and five months.

The document which sought to spell out the obligations of the respective parties was a detailed commercial contract covering 40 pages in the record. In its final form it is composed of the original writing dated March 8, 1967, and four amendments. Initially tenant leased 9,100 square feet with the inducement proviso that landlord would have other tenants constituting ". . . a department store and a food supermarket and other retail and service stores as indicated . . . having a total lease area of not less than 85,000 square feet. . ." (R. 11). The four amendments changed the plan of the premises, increased both the size of the leased premises and the shopping center area and increased the rentals. The fourth and final amendment executed four years after the first agreement of March 8, 1967, established an acceptance of the premises by tenant with a 20-year term running from April 1, 1971, and specified the amount of rent payable by tenant from its original occupancy of November 19, 1970, to the inception date. The rental for the 20-year term was at an annual rate of $33,345 payable in monthly instalments of $2,778.75 or 2.5% of tenant's

net sales at the leased location during a 12-month period, whichever is greater.

On July 6, 1972, while there still remained more than eighteen years of the agreed twenty-year term the tenant wrote landlord that it "had closed its store. . . and does not intend to reopen the same. You are therefore authorized in accordance with Paragraph 14 of the lease agreement to rent the premises to some other tenant. Jacobs will cooperate with you in every reasonable way in your efforts to obtain a new tenant." (R. 50).

Paragraph 14 of the lease contained two subparagraphs spelling out the remedies of the landlord in the event of a default by the tenant: Subparagraph (a) entitled "Landlord to terminate the lease and take over the premises." Subparagraph (b) provided that "In the event of such a default by tenant, landlord, as tenant's agent, without terminating this lease, may at landlord's option enter upon and rent the premises at the best price obtainable by reasonable effort, without advertisement and by private negotiations and for any term landlord deems proper. Tenant shall be liable to landlord for the deficiency, if any, between tenant's rent hereunder and the price obtained by landlord on reletting." (R. 23, 24).

By letter from the landlord's attorney dated July 7, 1972, which apparently crossed the tenant's letter of the previous day, the tenant was notified that the vacating of the premises was a violation of paragraph 7 (b). This paragraph provided that "Tenant will not abandon or vacate the leased premises during the term of this Lease, or any renewal or extension thereof. This covenant shall not apply if and so long as Landlord shall unreasonably withhold his consent to a proposed subletting of the premises by Tenant." (R. 17). This letter also called upon tenant to comply with the terms of the lease agreement. (R. 51). Twenty days later (July 27, 1972) the attorney wrote tenant that landlord had placed a sign on the vacated premises which said "Eckerds is coming" and which had been removed by tenant's employee. This letter further stated the landlord was "exercising its rights under paragraph 14 (b) of the lease agreement" (R. 52) and notified tenant to remove immediately its stock and fixtures. The record discloses that in the

interim, on July 17, 1972, landlord had made a new lease for another drug store to occupy a portion of the premises.

Later in the year (November 14, 1972) landlord's attorney again wrote tenant. This letter reviewed the correspondence and advised tenant that a portion of the premises had been leased to Eckerd's Clairmont Mall, Inc., which lease required landlord to pay $40,000 and to give the new tenant a credit of $11,500 against future percentage rent. The new lease had been made July 17, 1972. Count 1 of the complaint seeks recovery of this sum of $40,000 paid towards conversion of the premises by the new tenant plus $5,000 attorney fees.

As amended Count 2 of the complaint seeks recovery of $25,000 which landlord similarly advanced to another new tenant for conversion of the remainder of the original leased area into a restaurant and cocktail lounge.

Count 3 asks for damages of $50,185 from tenant as representing the difference in the amount of $75,558 expended by landlord for special plumbing, electrical, and other improvements to the premises in preparation for the defendant's special purposes and $25,373 representing the salvage value of said improvements after notification from the tenant of its intention to vacate the property.

Count 4 makes claim for an alleged deficiency in rent between that received from the two new tenants for the period from December 1972 through May 1973 and the amount of the rent that allegedly should have been paid by defendant under the lease agreement. Plaintiff computes this to be $4,059.54 but defendant's brief presents a computation which shows nothing to be due for this period with a small excess purportedly paid by defendant.

Defendant obtained summary judgment as to all four counts. Landlord-plaintiff thereupon took this appeal from that judgment. Appellee-tenant contends the trial court should be sustained upon two alternative theories: "First the damages claimed in Counts 1, 2 and 3 are improper and not recoverable under Georgia law, and, further, are not recoverable by the terms of the lease between plaintiff and defendant. Second, the alteration

and improvement of the premises terminated the lease and discharged defendant from further liability under it." (Brief, p. 4).

1. We first deal with the latter contention because if this position is held to be correct then the trial court should be sustained. Appellee argues our task is to construe the lease which would be a matter of law for the court in conformity with Code § 20-701. But the appeal here does not involve construction of a contract. Instead we are required to make a decision upon the conduct and actions of the landlord following the tenant's letter of July 6, 1972.

Tenant points out that the result of the landlord's activities by converting the premises from one location into two stores resulted in the landlord receiving more rent than had been paid previously. We do not regard this exercise of sound business judgment by a landlord to be the determinative factor. Our decision must be based upon the contract which the parties made between themselves. They expressly agreed as to the legal remedies given the landlord upon tenant's default. There can be no question that tenant defaulted. The tenant's notification of July 6, 1972, that it was vacating the leased premises with no intention to return was a clear violation of Paragraph 7 forbidding an abandonment. Courts must recognize the realities of trade and commerce. In a shopping center, under agreements such as existed here, tenants actively operate their businesses as a part of the whole enterprise. This is shown by the provisions that made abandonment *verboten* and by other lease provisions as to joint activities such as parking areas. The agreement for a percentage rental based on receipts certainly indicated the parties intended a continuing business.

When informed of the tenant's admitted default, the landlord then had its choice to exercise one of the two remedies agreed upon for such event in Paragraph 14. Subparagraph (a) permitted landlord to terminate the lease. Subparagraph (b) permitted the landlord to enter upon the leased premises and obtain another tenant with the original tenant remaining liable for any deficiency. Theoretically, the law gave the landlord a third choice:

to permit the premises to remain vacant and collect the agreed rental each month. In actuality we must recognize the third choice was not in conformity with sound business because the situation in a shopping center differs from that involved in a store building standing alone, a fact explicit in and recognized throughout the instant written forty-page lease. Obviously landlord would not want a vacant store in its shopping center even though the original tenant remained solvent and paid the minimum monthly rental. Tenant recognized this in its offer to co-operate "in every reasonable way in your efforts to obtain a new tenant." (R. 50).

Did the landlord's actions between July 7 and July 27 and thereafter constitute a termination of the lease under subparagraph (a) or did its activities represent a conformance with the landlord's rights under subparagraph (b)? We regard this question to be one which should be determined by a jury and not as a matter of law by a summary judgment. To warrant the entry of summary judgment, the undisputed facts "should show the right of the defendant to a judgment with such clarity as to leave no room for controversy, and they should show affirmatively that the plaintiff would not be entitled to recover under any discernible circumstances." *Watkins v. Nationwide &c. Ins. Co.,* 113 Ga. App. 801, 802 (149 SE2d 749). "The essence of [a motion for summary judgment] is that there is no genuine issue of material fact to be resolved by the trior of the facts." *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178 (1) (129 SE2d 408). See also Code Ann. § 81A-156.

Tenant contends *Pinkerton's, Inc. v. Palmer, Inc.,* 113 Ga. App. 859 (149 SE2d 859) is controlling. We disagree. There the landlord expended $7,381.26 to refurbish and renovate the office premises in order to lease them to a new tenant for a three-year period after tenant had vacated with only five months remaining of an initial five-year term. Our court there reversed a directed verdict for the landlord for the stated reason that it would have been "unconscionable to say that any part of the very extensive improvements and renovations was done on behalf of the defendant (tenant) in this proceeding." The court specifically noted in the opening

words of its headnote that the decision was "under the facts in this case." There the landlord expended $7,381.26 for renovations for a new tenant when the five months remaining rental totalled only $2,942.50. This financial computation is sufficient to distinguish that case from the one sub judice where more than 18 years remained at the date of tenant's abandonment.

2. As we have ruled the question of landlord's conduct presents a question of fact for the jury it is incumbent upon us to consider what damages are legally recoverable under each count.

The elementary and controlling principle is stated in Code § 20-1407: "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach, and such as the parties contemplated, when the contract was made, as the probable result of its breach." Were the amounts landlord advanced to the two new tenants as claimed in Counts 1 and 2 within the contemplation of the parties? Landlord contends the use of the word "price" in subparagraph (b) showed this to have been so intended. The pertinent portion reads that "Tenant shall be liable to landlord for the deficiency, if any, between tenant's rent hereunder and the price obtained by landlord on reletting." This contention lacks validity. See *Love v. McDevitt,* 114 Ga. App. 734 (152 SE2d 705). Obviously, the parties used the word "price" as synonymous with "rent." It is also clear that this paragraph (b) was not intended to give the landlord carte blanche authority to saddle the tenant with expenditures upon landlord's own property to convert it into a parcel to yield greater income. Tenant agreed to pay any deficiency that resulted from a reletting of the premises but reason and logic indicates this would not include large sums spent for alteration of the premises so as to provide a greater return. We therefore agree the trial court properly granted defendant judgment upon Counts 1 and 2.

3. Count 3 presents an entirely different situation. Here plaintiff landlord contends it expended $75,558 "for special plumbing, electrical and other improvements specifically for and especially for" the defendant and that the salvage value thereof after tenant's breach amounted

to $25,373. Plaintiff seeks the difference of $50,185. Such damages would come within the contemplation of the parties at the making of the contract and which would arise naturally and according to the usual course from such breach. For jury determination would be the actual amounts coming within this category of intended foreseeable damages. Of course, this would be considered only if the jury finds from the conduct of landlord following the notification was in accord with sub-paragraph (b) rather than a termination of the lease under subparagraph (a) with a consequent acceptance of the premises for its own account.

Defendant argues that the measure of damages is limited to the rent stipulated in the lease minus rent paid by subsequent re-renting. This might well be true as to a single building but should not apply to a situation where tenant agrees for landlord to make special expenditures for its purposes on a long-term lease in a shopping center where the parties included a business receipts percentage as being an important factor. Clearly the damages sought under Count 3 were within the contemplation of the parties.

4. The fourth count seeks recovery of an alleged deficiency in the rent between that amount paid by defendant and the amounts received by landlord from the new tenants. The deficiency is claimed to exist through May 1973. Such deficiency would be legally recoverable if the jury determines (1) the landlord's conduct did not constitute a termination of the lease and (2) the amounts received by landlord did result in a deficiency. *Love v. McDevitt,* 114 Ga. App. 734, supra. Our ruling is limited to the principle that a deficiency in rentals agreed to be paid and those actually received would be legally recoverable.

*Judgment affirmed in part; reversed in part. Bell, C. J., and Quillian, J., concur.*

ARGUED MARCH 4, 1974 — DECIDED APRIL 22, 1974.

*Westmoreland, Hall, McGee & Warner, John L. Westmoreland, Jr., P. Joseph McGee,* for appellant.

650

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein,*
*George B. Haley, Jr., Thomas C. Harney,* for appellee.