## 51254. JACOBS PHARMACY COMPANY, INC. v. BUFORD-CLAIRMONT, INC.

EVANS, Judge.

Buford-Clairmont, Inc., leased space in its Buford-Clairmont Mall to Jacobs Pharmacy Company, Inc., for use as a combined drug store-cafeteria. The lease was for 20 years. After an occupancy of less than 2 years, tenant advised the landlord it was vacating the premises, and proceeded to vacate same. The landlord attempted to lease the area to others, and was finally able to divide the area and to lease part to another drug store and the remainder to a restaurant and lounge.

Landlord sued tenant in four counts for damages arising out of the breach. Summary judgment was granted to defendant, but on review, this court in *Buford-Clairmont, Inc. v. Jacobs Pharmacy Co.,* 131 Ga. App. 643 (206 SE2d 674), affirmed the lower court as to Counts 1 and 2, and reversed as to Count 3 (sums expended to develop the premises for the original tenant) and Count 4 (deficiency in the rent between the new tenants and the original tenants).

Plaintiff amended Count 3 and also added a 5th count for damages in removal of defendant's equipment and fixtures from the premises.

Verdict and judgment were returned against defendant for $50,000. Defendant's motion for judgment notwithstanding the verdict and in the alternative for new trial was denied. Defendant appeals. *Held:*

1. Counsel for defendant argues the evidence was insufficient to show that the improvements were special and made specifically for defendant. But the evidence shows that the defendant made a specific agreement with the landlord to build in accordance with a special design for a Jacob's Pharmacy, prepared especially for these

premises. Counsel for defendant contends that the evidence contained many items other than special expenditures, such as rough carpentry and other building items, replacement of electrical wiring, and roll-up grills. The law of this case in *Buford-Clairmont, Inc. v. Jacobs Pharmacy Co.,* 131 Ga. App. 643, 649, supra, establishes that the measure of damages for the breach of this 20-year lease was not limited to the written stipulation in the lease, minus rent paid by subsequent renting. Here, the leased facilities were part of a shopping center mall, and the tenant agreed for the landlord "to make special expenditures for its purposes on a long-term lease . . . where the parties include a business receipts percentage as being an important factor." The special expenditures showed the total cost for the construction of the premises for the defendant (excluding the shell of the building) from which the salvageable items of construction were subtracted.

Under the ruling of *Buford-Clairmont, Inc. v. Jacobs Pharmacy Co.,* 131 Ga. App. 643, 649 (3), supra, the evidence as to "special expenditures" was sufficient to support the claim of damages under Count 3. These special expenditures were all of the improvements of the leased premises occupied by the defendant (other than the shell of the building) performed specially in accordance with the agreement by and between the parties less the salvage value.

2. Defendant requested a charge that the plaintiff could not recover for any improvements which had been required for other tenants who might have leased the premises from plaintiff, but could recover for only those improvements required because of the particular nature of defendant's business or its peculiar needs. The court did charge the jury to determine, if the contract was not terminated and if the plaintiff suffered any damages, the same shall be the difference between the sums of money expended by the plaintiff for special plumbing, electrical and other improvements made specifically and expressly for the defendant by the plaintiff, less their salvageable value after the defendant's breach of the contract.

The charge requested was not adjusted to the evidence. The charge that was given is in conformity to

the measure of damages set forth at page 649 of the *Buford-Clairmont, Inc. v. Jacobs Pharmacy Co.* case. The court did not err in refusing to give this request to charge.

3. The charge as to the salvageable value of items specially used in construction for the tenant was properly stated to be the value for further usefulness or value to people or tenants generally in the open market, not just to a particular person or tenant. There was testimony that the landlord was unable to rent the premises to other prospective tenants in the existing form. Thus, the premises were shown not to be useful to other prospective tenants. The charge, as requested, that an item which had the same usefulness when defendant leased the premises as it did when he vacated the premises and should be assigned a salvage value or 100% of the amount plaintiff expended for it, because defendant would not be liable for mere depreciation or aging of an item, is extremely argumentative and has no basis of fact here. The court properly refused to give the requests to charge as to salvage value.

4. Defendant argues that the court erred in failing to charge that the jury may decide "after considering all of the facts, whether plaintiff's conduct and all of the alterations it made to the premises shows an intention to relet the premises for plaintiff's own account in which event defendant's lease was terminated." Defendant cites 51(c) CJS, Landlord and Tenant, § 125-5, pp. 403-04; and also *Hulsey v. Harrington,* 57 Ga. App. 479 (195 SE 901) for authority, but the *Hulsey* case does not support its position.

5. The contract, as to agency, in paragraph 14 (b) of the lease provided as follows: "In the event of such a default by Tenant, Landlord, as Tenant's Agent, without terminating this Lease, may at Landlord's option, enter upon and rent the premises at the best price obtainable by reasonable effort . . ." The landlord had to remodel the premises to make same suitable and tenantable and in order to secure another tenant. The defendant submitted three written requests to charge as to agency, the duty of the agent, etc., and the court refused to give them, although he did charge on the question of whether the plaintiff's action or conduct constituted a termination of

the lease under subparagraph (a) of paragraph 14, or whether plaintiff's action or conduct represented a conformance with the plaintiff's rights as the landlord under subparagraph (b) of paragraph 14 of the lease.

In view of the charge as given, we do not find error in failing to give the written requests to charge, although we do agree that this is a rather close question.

There was no direct testimony that the landlord, as agent of the tenant, violated the agency relationship. Defendant did not request that it be notified further by plaintiff and it did not request that it be allowed to participate in the negotiations carried on by the plaintiff.

The substance of the written requests to charge were: (a) An agent must act within the authority granted to him, and not exceed or violate his instructions. (b) An agent must make known to defendant all material facts which concern the transaction and subject matter of the agency. (c) An agent cannot deal in business within the scope of his agency for his own benefit.

While the court did not expressly give any of the requests to charge on agency, it substantially charged as to whether the plaintiff's action or conduct constituted termination of the lease. There was no direct testimony that the landlord, as agent of the tenant, violated any agency relationship. The court was not required to give any of these written requests.

6. Objection was made to the testimony of district supervisor of the outstanding mortgage holder. The mortgage holder held an assignment of the lease agreement between the plaintiff and defendant as collateral on the loan. This witness was allowed to testify, over objection, as to the continued existence of the lease agreement between defendant and plaintiff. His answer was that "after looking through my file, I can find nothing *that says* [the lender] ever released the defendant from its liability under the lease." This testimony was relevant to the issue before the court and was not erroneous for any reason. The testimony was not hearsay or a legal conclusion, but testimony of the witness as to information within his knowledge and as to what documents he had in his possession.

7. The court did not err in refusing to give the

request to charge that since plaintiff demanded that defendant remove his fixtures and equipment from the premises, then defendant is not responsible for any damages in removing said fixtures and equipment. Paragraph 20 of the lease agreement provides: "Tenant shall have the right to remove [fixtures] . . ., provided tenant shall repair all physical damages to the premises caused by such removal." There was evidence that the defendant responded to plaintiff's demand to remove its fixtures, and in removing same, damaged the premises for which it was liable. Under the above quoted language from the contract, tenant was bound to repair all damages caused thereby. There was no error in failing to give the charge requested.

8. The court did not err in refusing to charge that if the leased premises were damaged by defendant's removal of its fixtures or equipment and the portion thus damaged was removed from the premises during the remodeling of the premises for the new tenants, plaintiff could not and would not be entitled to recover any damages from the defendant in this instance. The evidence here fails to disclose that plaintiff claimed damages for any such improvements, or that he was seeking double damages.

9. Plaintiff submitted into evidence the new lease agreements with the new tenants and also testimony concerning the payments of $40,000 toward the construction of improvements to the new drug store and $25,000 toward the improvements for the restaurant and lounge. Defendant objected to the submission of the oral testimony but not the documentary evidence. The testimony was not objectionable in that it showed the non-salvageability of the premises for reletting to another tenant and the necessity to have the premises remodeled to a state suitable for use of other tenants. And even if objectionable, failure to object to the documentary evidence was a waiver of this enumeration.

10. Defendant enumerates error because the court made certain remarks that might have been calculated to suggest that unless restrained by the court, defendant's counsel might take advantage of the witness; and told the witness to relax. Counsel's questions to that point had

been properly and decorously made, and there was no reason for the court to make the remark that he did, and it could have disparaged counsel in the presence of the jury as to the propriety of counsel's conduct of the cross examination. But counsel made no objection or motion for mistrial, and any point he may have had as to this phase of the case has been waived. Counsel was not prevented from pursuing a thorough cross examination of this witness after this comment.

11. The evidence was sufficient to support the verdict, and the court did not err in denying the motion for judgment notwithstanding the verdict or motion for new trial.

*Judgment affirmed. Deen, P. J., and Stolz, J., concur.*

ARGUED SEPTEMBER 29, 1975 — DECIDED DECEMBER 3, 1975 — REHEARING DENIED DECEMBER 19, 1975.

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, George B. Haley, Jr., Thomas C. Harney,* for appellant.

*Westmoreland, Hall, McGee & Warner, P. Joseph McGee,* for appellee.