729 P.2d 938

**FIRST AMERICAN BANK & TRUST CO., Plaintiff/Appellee,**

v.

**SAFEWAY STORES, INCORPORATED, Defendant/Appellant.**

**No. 2 CA–CIV 5692.**

Court of Appeals of Arizona, Division 2, Department A.

June 11, 1986.

Reconsideration Denied July 16, 1986.

Review Denied Nov. 4, 1986.

Butler & Stein, P.C. by Alan L. Stein and Annette Everlove, Tucson, for plaintiff/appellee.

O'Connell, Wezelman, Poston & Bossé, P.C. by Steven L. Bossé, Tucson, for defendant/appellant.

HOWARD, Presiding Judge.

This is a forcible entry and detainer action. The trial court, sitting without a jury, found Safeway Stores, Inc., (Safeway) guilty of unlawful detainer, granted restitution of the premises to First American Bank & Trust Company (First American), and awarded First American damages for rent due in the sum of $58,014 along with its costs and attorney's fees.

The determinative issue was whether the lease executed by Safeway and Betz Corporation (Betz), First American's assignor, contained an implied covenant of continuous operation which was breached by Safeway. The trial court, after making extensive findings of fact and conclusions of law, held that it did. We affirm.

On March 8, 1967, Betz leased to Safeway space in a shopping center located at the intersection of South 12th Avenue and Ajo Way in Tucson. The lease commenced April 1, 1968. It provided for a term of 20 years with an option to extend the lease for four additional five-year terms. The square footage leased to Safeway represented at least one-half of the total number of square feet available for lease in the center.

Under the terms of the lease, Safeway agreed to pay a fixed minimum monthly rent of $2,500, or $30,000 per year, which sum amounted to a base rent of $1.46 per square foot. Safeway further agreed to pay a percentage rent of 1.25 percent of its gross sales, offset by certain expenses, in excess of $2,000,000 per year. The lease expressly stated that the lessee made no representation or warranty as to the sales it expected to make on the leased premises.

Paragraph Five of the lease required Betz to build a grocery store to suit Safeway's specifications and paragraph 14 of the lease restricted Betz from leasing space within the shopping center to any business which would compete with Safeway in the sale of food. The lease also allowed Safeway to erect or remove any signs or fixtures on the premises so long as they complied with applicable laws.

Paragraph 13 of the lease provided:

"13. Assignment and subletting. Lessee may assign this lease or sublet the whole or any part of the leased premises. If lessee assigns this lease, lessee shall remain liable to lessor for full performance of lessee's obligations."

During the first four years of the lease, no percentage rent was paid. In 1975, Safeway paid percentage rent in the sum of $32,202.52, and from 1975 to 1982, the annual percentage rent fluctuated between approximately $23,000 and $32,000.

On December 24, 1983, Safeway ceased operating the grocery store, closed the store, boarded up the windows and vacated the premises. Safeway claimed at trial that it ceased operation because the opening of a Fry's Food Store nearby made that Safeway location unprofitable.

On December 30, 1983, Safeway was served with the notice of default and Betz terminated the lease on January 20, 1984. Safeway refused to surrender possession of the premises and this action for forcible

entry and detainer was filed. During the course of the trial court proceedings, Safeway continued to exclusively possess the premises. In August 1984, after the premises had been vacant for eight months, Safeway allowed its wholly-owned subsidiary, the Liquor Barn, to operate in 15,000 square feet of the premises. Safeway sublet the remaining 5,000 square feet to Pistol Pete's Pizza Parlor. At the time of trial, Safeway was receiving from Pistol Pete's Pizza Parlor, a base rent of $32,000 per year and an additional five percent of gross sales.

The trial court found that the four gentlemen who negotiated the lease on behalf of Betz were experienced shopping center developers. It also made the following pertinent findings of fact:

"16. The base rent of $1.46 per square foot per year was not in itself a fair, adequate, or market rent when the lease was made.

17. Defendant has continued to pay the base rent, which amounts to $2,500 per month, but has generated and paid no percentage rents for the period from December 24, 1983, to date.

\* \* \* \* \* \*

19. A covenant of continuous operation arises from and is implied by the language and the provisions of the lease, particularly the clauses providing for percentage rent, requiring the landlord to build to suit as a grocery store (paragraph 5), and restricting competition in the shopping center (paragraph 14) and on adjacent property (paragraph 29) and it appears from the language of the lease that Defendant's continuous operation was so clearly within the contemplation of the parties that they deemed it unnecessary to express it.

20. The subject of continuous operation was never discussed between the parties and is not completely covered by the lease. A covenant of continuous operation would have been made or required by the landlord if attention had been called to it. \* \* \* \*"

In *Walgreen Arizona Drug Co. v. Plaza Center Corp.*, 132 Ariz. 512, 515, 647 P.2d 643, 646 (App.1982), quoting *Lippman v. Sears Roebuck & Co.*, 44 Cal.2d 136, 280 P.2d 775, 779 (1955), the court discussed implied covenants of continuous operation and pointed out that certain conditions must be satisfied before a covenant will be implied:

"(1) the implication must arise from the language used ...; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied covenant where the subject is completely covered by the contract."

In agreements where the rental is based either upon a straight percentage of sales, or upon a minimum fixed rental and additional rental based upon a percentage of sales, the inadequacy of the base rent implies a covenant of continuous operation. *Walgreen Arizona Drug Co. v. Plaza Center Corp., supra.*

Safeway contends that the testimony of Betz' expert appraisal witness does not support the trial court's conclusion that the base rent was inadequate and that the provision of the lease allowing Safeway to assign the lease precludes the trial court from finding the existence of an implied covenant of continuous operation. We do not agree. The expert witness unequivocally testified that the base rent was not equal to the fair rental value of the premises leased to Safeway. He testified that the percentage clause of the lease had to be considered in calculating the fair rental value of the property and, absent the percentage provisions, the monthly minimum rental was not sufficient to satisfy the obligations that the landlord would incur in financing the construction and development of the property.

The court found that there was no incongruity between paragraph 13 of the lease, which allowed Safeway to sublet and assign the lease, and an implied covenant of continuous operation. Safeway argues that an implied covenant of continuous operation is repugnant to the provision of the lease allowing it to assign the entire lease. On that issue, we agree with the conclusion of law made by the trial court:

> "The presence of a right to assign or sublet is not necessarily inconsistent with an implied covenant of continuous operation. The two covenants can be harmonized to permit subletting or assignment to a business of the same character."

Appellee has requested and is entitled to attorney's fees and costs in connection with the defense of this appeal pursuant to A.R.S. § 12–341.01. Such fees will be granted upon appellee's compliance with Rule 21(c), Rules of Civil Appellate Procedure, 17 A A.R.S.

Affirmed.

HATHAWAY, C.J., and FERNANDEZ, J., concur.