A90A2184. PIGGLY WIGGLY SOUTHERN, INC. v. HEARD et al.
(399 SE2d 244)

DEEN, Presiding Judge.

This appeal is from the grant of summary judgment to appellee landlords against appellant Piggly Wiggly Southern (hereinafter "PWS") in which the trial court ruled that PWS had breached an express and implied covenant in a lease contract between the parties. On January 21, 1963, PWS and the landlords' predecessor entered into a lease agreement whereby the landlords constructed a supermarket pursuant to plans and specifications prepared by PWS. The term of the lease was 15 years with an expiration date of January 31, 1979, at an annual rent of $29,053.60 plus the payment of percentage rent in the amount of one percent of annual gross sales in excess of $2,000,000. The lease was subsequently renewed for an additional seven years, with options to extend the term for two additional periods of three years each at the same basic and percentage rental amounts. PWS exercised its first three-year option and, on June 23, 1988, exercised the second option to extend the lease period to January 31, 1992. When the lease was executed in 1963 the building constructed for PWS was the only one on the property, but by the time the 1979 extension was signed the landlords had built up a small neighborhood shopping center with eight other satellite shops centered around the supermarket as the anchor store.

On March 4, 1989, PWS ceased operating a grocery store at the leased premises after it was acquired by another corporation, which moved the grocery store operations into a supermarket location in a nearby shopping center it owned. Since that time the leased premises have remained vacant and no applications were made for a business license. PWS continued to make the base monthly payments, but no percentage rent has been paid since the closing of the store because there have been no sales. While other competing supermarkets have attempted to lease the property at considerably higher base rents, PWS has refused to sublease the premises to a competitor. The landlords filed the instant suit to recover damages in the form of percentage annual rents from the date operation of the supermarket ceased to the end of the second three-year option; damages for the alleged loss of percentage rent from other leases and diminution of property values in the shopping center; and attorney fees and expenses of litigation. By amendment, the landlords added a claim for punitive damages and sought a declaratory judgment that they were entitled to possession of the premises so that they could lease it to another tenant to operate as a grocery store business. Motions for summary judgment as to various counts of the complaint were filed by both parties. The trial court entered an order granting the landlords' motion on the basis of a breach of the lease contract by PWS and found that they

were entitled to damages therefor, the amount to be determined later. It overruled PWS' motion for summary judgment but dismissed the count of the landlords' complaint seeking declaratory judgment. On appeal, PWS contends that the trial court erred in finding that it had breached the lease contract by failing to continuously occupy the premises and operate a business thereon; by denying its motion for summary judgment and failing to find that there was no express or implied covenant requiring it to continuously occupy the premises and operate a business thereon; and in finding that the landlords were entitled to damages based on its payment of past percentage rental.

1. The lease provision in controversy provides as follows: "LESSEE is leasing the leased building for use as a supermarket and the other parts of the leased property for parking and other uses incident to a supermarket business, but LESSEE's use of the leased building and the leased property shall not be limited nor restricted to such purposes, and said building and property may be used for any other lawful business, without the consent of LESSOR." The trial court determined as a matter of law that this language gave rise to both an express and implied covenant on behalf of PWS to continuously conduct business in the leased premises, interpreting the term "any other . . . business" as contemplating that *some* business enterprise must be conducted on the premises. PWS argues that such language *permitting* the leased premises to be used for certain purposes does not *obligate* the tenant to actually use the property for any purpose, and that the issues involved are controlled by the recent decisions of this court in *Piggly Wiggly Southern v. Eastgate Assoc., Ltd.*, 195 Ga. App. 10 (392 SE2d 337) (1990) and *Kroger Co. v. Bonny Corp.*, 134 Ga. App. 834 (216 SE2d 341) (1975), relied on therein.

Neither *Eastgate* nor *Bonny* involved a lease with language requiring that the leased property be used for a lawful *business*, only that the premises be used "in a lawful *manner*." (Emphasis supplied.) Moreover, as found by the trial court in the instant case, the percentage rent paid while the store was being operated under the lease amounted to more than half of the total rent (53 percent) during the lease extension period. Thus the base rent, which was not raised when the lease was extended, did not represent the fair market value of the premises when the first extension was executed. In *Eastgate* no percentage rent was ever paid because the grocery store never opened; in *Bonny* it was stipulated that the base rent represented the fair market rental for the property when the lease was executed and the percentage rent, which was paid in only one year of a 13-year lease, amounted to barely over one percent of the total payments made. Based on those facts it was held that " 'when the rental to be received under a lease is based on a percentage of the gross receipts of the business, with a substantial minimum [or base rent], there is no im-

plied covenant that the lessee will operate its business in the leased premises throughout the term of the lease. [Cits.]'" *Eastgate,* supra at 12.

The trial court found the case most factually similar to this one to be *Fifth Ave. Shopping Center v. Grand Union Co.,* 491 FSupp. 77 (N.D. Ga. 1980). Applying the above Georgia substantive law, the federal district court concluded that "if the parties to a lease contemplate that the amount of rent to be generated by a percentage payment clause will be substantially greater than the minimum rental specified in the contract, it is possible to infer an implied covenant that the lessee will operate its business in the leased premises throughout the term of the lease." Id. at 80-81. The *Fifth Ave.* case held that the base rent of only 57 percent of the total rental paid was "'substantially below contemplated performance, and was therefore not "substantial."'" Id. at 81. Utilizing this reasoning, the trial court held that in the lease under consideration, the term "business" use of the premises did not contemplate a closed or vacant store; and that the lease contained an affirmative business use obligation that was mandatory as well as retroactive, which meant that in the event PWS decided to cease operating its grocery store in the leased premises, which it could do under the lease, it still had the duty to carry on a business use within the premises so as to generate percentage payments.

We agree and affirm. The lease contract was prepared by PWS and thus, even though it is the tenant, was properly construed against it. *Farm Supply Co. of Albany v. Cook,* 116 Ga. App. 814, 818 (2) fn. 2 (159 SE2d 128) (1967). The language permitting PWS to use the premises for "any other lawful business," as opposed to using it in "any lawful manner," clearly constitutes a business use covenant giving PWS the option to either use the premises for its supermarket or to use it or sublease it for some other lawful business use which would generate sales or other income. In contradistinction, if the covenant were only to use the premises in a lawful *manner,* there would be no obligation to operate a business during the term of the lease so long as the base rent was paid. The fact that the base rent of $29,053 a year paid by PWS is not an insubstantial sum standing alone, as it points out, does not negate the fact that when the percentage rent is equal to or greater than the base rent, the base rent is not considered "substantial" in the context of an implied use provision. Indeed, PWS was told when the 1979 extension was negotiated that the landlords would not raise the base rent agreed upon in 1963 because "the percentage rent will take care of inflation and we don't need to draw another lease with a new base rent."

Nor do we agree that if it were PWS's motive to refuse to sublease in order to keep out competition for the benefit of its other

store, this could be construed as a business use. "This result would be intolerable and would destroy the good faith reliance among individuals which permits them to act in accordance with their agreements." *Brack v. Brownlee*, 246 Ga. 818, 820 (273 SE2d 390) (1980). Furthermore, this court has previously recognized that the situation in a shopping center differs from that where the leased building stands alone: "Obviously landlord would not want a vacant store in its shopping center even though the original tenant remained solvent and paid the minimum monthly rental." *Buford-Clairmont v. Jacobs Pharmacy Co.*, 131 Ga. App. 643, 647 (1) (206 SE2d 674) (1974). It follows that the trial court correctly granted summary judgment to the landlords and denied summary judgment to PWS on the issues of express and implied covenant to continuously occupy or sublease the premises and conduct a revenue-producing business therein under the terms of the lease.

2. Since the trial court expressly reserved for later determination the amount of damages to be awarded, appellant's final enumeration of error concerning the calculation of damages based on past percentage rent payment presents nothing for consideration by this court. See *Crawford v. Phillips*, 173 Ga. App. 517 (2) (326 SE2d 593) (1985).

*Judgment affirmed. Pope and Beasley, JJ., concur.*

DECIDED NOVEMBER 8, 1990 —
REHEARING DENIED NOVEMBER 20, 1990 — ▬▬▬▬▬

*Martin, Snow, Grant & Napier, George C. Grant, John C. Edwards*, for appellant.

*J. Sewell Elliott, Jr., Hall, Bloch, Garland & Meyer, Benjamin M. Garland*, for appellees.