S91G0333. PIGGLY WIGGLY SOUTHERN, INC. v. HEARD et al.

(405 SE2d 478)

HUNT, Justice.

This case involves the construction of a shopping center store lease. Both the trial court and the Court of Appeals held the lease contained an express continued use covenant as well as an implied covenant of continued operation. *Piggly Wiggly Southern v. Heard*, 197 Ga. App. 656 (399 SE2d 244) (1990). We granted the writ of certiorari to determine whether the Court of Appeals was correct in its construction of the parties' lease, and reverse.

In 1963, the parties executed a lease in which appellees' predecessor agreed to construct a supermarket for appellant according to plans prepared by appellant. Appellant drafted the lease, which began in 1964 for a term of 15 years, and called for an annual base rent of $29,053.60 as well as a percentage rent of annual gross sales exceeding $2,000,000. The lease was renewed on the same terms for an additional seven years in 1979, with options to renew for two additional three-year terms. Appellant exercised both renewal options and, after

it was acquired by a new corporation, one month into the second three-year term, closed its store, vacated the premises, and moved its grocery store operation to a nearby shopping center belonging to its new owner. While appellant continued to pay the annual base rent to appellees, it refused to sublease the vacant store, despite the interest of other supermarkets in the abandoned space. Appellees filed suit seeking damages for appellant's alleged breach of the lease.

We agree with appellant that the lease agreement between the parties does not contain an express covenant of continuous operation. Rather, the language of the agreement is plainly to the contrary, and, therefore, the trial court, the Court of Appeals, and this court are not authorized to construe it otherwise. *Heyman v. Financial Properties Developers*, 175 Ga. App. 146 (332 SE2d 893) (1985). The language of the agreement expressly negates a requirement of continuous operation:

> . . . LESSEE'S use of the leased building and the leased property shall not be limited nor restricted to such purposes [use as a super-market, etc.], and said building and property may be used *for any other lawful business*, without the consent of LESSOR (emphasis supplied).

See *Kroger Co. v. Bonny Corp.*, 134 Ga. App. 834 (216 SE2d 341) (1975).[1]

Nor does the lease agreement contain any provision which would create an *implied* covenant of continuous operation. Rather, the contract, read as a whole, indicates otherwise. The agreement's provision for free assignability by the tenant, without consent of the lessor, weighs strongly against a construction of the contract which would require the tenant to continue its business throughout the term of the lease. *Kroger Co. v. Bonny Corp.*, supra at 836 (1). Likewise, the existence of a substantial minimum base rent, in addition to the provision for percentage rental payments, suggests the absence of an implied covenant of continuous operation. Id. at 838 to 839 (2). See also 38 ALR2d Annot., p. 1113 et seq., Construction and Application of Provision in Lease Under Which Landlord is to Receive Percentage of Lessee's Profits or Receipts.

The parties did not agree to nor bargain for appellant's continuous operation of the premises, and we are not authorized to rewrite the contract to create such a provision. See *Coffee System of Atlanta*

---

[1] In *Kroger Co. v. Bonny Corp.*, the Court of Appeals rejected the contention that language in the lease agreement providing the tenant "use said premises in a lawful manner" created a covenant of continuous operation.

*v. Fox*, 227 Ga. 602 (182 SE2d 109) (1971).[2]

*Judgment reversed. Smith, P. J., Weltner, Fletcher, JJ., and Judge Stephen E. Boswell concur; Bell and Benham, JJ., dissent; Clarke, C. J., not participating.*

BENHAM, Justice, dissenting.

Because I disagree with the majority's assertion that the language of the lease expressly negates a requirement of continuous operation, and because I would hold that the Court of Appeals was correct in holding that there was in this case both an express covenant and an implied covenant of continuous operation, I must respectfully dissent to the majority's reversal of the judgment of the Court of Appeals.

In addition to the facts set out in the majority opinion, it should be noted that the complete text of the lease provision on which appellees rely reads as follows:

> Lessee is leasing the leased building for use as a supermarket and other parts of the leased property for parking and other uses incident to a supermarket business, but LESSEE'S use of the leased building and the leased property shall not be limited nor restricted to such purposes, and said building and property may be used for any other lawful business, without the consent of LESSOR.

Although the language of this lease with regard to appellant's obligation to continue business operations in the leased premises during the term of the lease is not as clear as the language in non-abandonment clauses such as those quoted in *Kroger Co. v. Bonny Corp.*, 134 Ga. App. 834 (216 SE2d 341) (1975),[3] any ambiguity is dispelled by application of the rules governing the construction of contracts. One of the rules pertinent to this matter is

> that an ambiguity in a document should be construed against its draftsman. "If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be pre-

---

[2] See Generally 40 ALR3d Annot., p. 971 et seq., Lease of Store as Requiring Active Operation of Store, which states the general rule that

. . . the courts take the position that the lessee is under no obligation, in the absence of a specific provision therefor, to occupy or use, or continue to use, the leased premises, even though one of the parties, or both, expected and intended that they would be used for the particular purpose to which they seemed to be adapted or for which they seemed to be constructed.

Id. at 975.

[3] " '[L]essee agrees not to abandon or vacate leased premises during the period of this lease.' " Id. at 838.

ferred; . . ." OCGA § 13-2-2 (5). [*Anderson v. Southeastern Fidelity Ins. Co.*, 251 Ga. 556, 557 (307 SE2d 499) (1983).]

Under the authority quoted above, since the lease with which this case is concerned was drafted by appellant, it must be construed most strongly against appellant. Another applicable rule is the one expressed in OCGA § 13-2-2 (4), requiring that a contract be considered in its entirety.

> [A] contract should not be torn apart and construed in pieces, but the court should look to the entire instrument and so construe it as to reconcile its different parts and reject a construction which leads to contradiction, in order to ascertain the true intention of the parties, which is the real purpose of the judicial construction of contracts. [Cits.] [*Sachs v. Jones*, 83 Ga. App. 441, 444 (63 SE2d 685) (1951).]

In considering the entirety of the lease contract in the present case, I note that in addition to the provision for appellant using the premises for a supermarket business or any other lawful business, the lease provides for percentage rental payments, i.e., that appellant pay as rent in addition to a stated base rent, a percentage of its revenues over a specified amount.

Considering the percentage rental provision together with the provision quoted above relating to business use, which includes a right to assignment of the lease without consent of the lessor, and construing the lease most strongly against appellant as the drafter of the lease, I conclude, as did the trial court and the Court of Appeals, that the lease contains an express covenant by appellant that it would conduct business operations in the leased premises during the entire period of the lease.

Appellant and the majority rely on *Kroger Co. v. Bonny Corp.*, supra, for the proposition that the provision in the lease for use of the premises for a business other than operating a supermarket does not amount to an express covenant of continuous operation. There is, however, an essential difference between the language used in the lease in *Bonny* and the language used in the lease in this case. In *Bonny*, the pertinent language provided only that the tenant would "use said premises in a lawful manner." Paying the base rent and keeping the premises empty would certainly constitute using the premises "in a lawful manner." The lease in the present case, in contrast, requires that appellant use the premises for a "lawful business." Holding the premises empty cannot reasonably be construed as using the premises for a "business." That distinction in the lease language renders *Bonny* inapplicable to the present case.

The majority rejects the possibility of the existence of an implied covenant with the simplistic assertion that the base rent provided for in the lease is "substantial." What are the standards to be applied in determining whether the base rent is a "substantial" amount? Is substantiality of the base rent the only factor to be considered? These questions go unanswered in the majority opinion. A more reasoned approach than simply declaring that the base rent is substantial and that there cannot, therefore, be an implied covenant of continuous operation would be to apply the conditions enumerated by the Arizona Court of Appeals in *First American Bank &c. Co. v. Safeway Stores,* 729 P2d 938, 940 (151 Ariz. 584) (1986):

> [C]ertain conditions must be satisfied before a covenant will be implied: "(1) the implication must arise from the language used; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied covenant where the subject is completely covered by the contract."

I am persuaded that adoption of those standards in this state would lead to more certainty in the drafting and interpretation of commercial leases, and that the application of those standards to the present case would result in the conclusion that there was an implied covenant of continuous operation in the lease under consideration. Since that conclusion would require affirmance of the judgment of the Court of Appeals, I must dissent to the reversal mandated by the majority.

DECIDED JUNE 28, 1991 —
RECONSIDERATION DENIED JULY 26, 1991.

*Martin, Snow, Grant & Walker, George C. Grant, John C. Edwards,* for appellant.

*Hall, Bloch, Garland & Meyer, Benjamin M. Garland, J. Sewell Elliott,* for appellees.