[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 3, 2005
THOMAS K. KAHN
CLERK

_____

No. 03-15681
Non-Argument Calendar

_____

D.C. Docket No. 00-CV-2934

R.O. PARSONS, D.M.D., M.S.D., P.C. and
RONALD PARSONS, D.M.D., M.S.D.,

Plaintiffs-Appellees,

versus

ORTHALLIANCE, INC., f.k.a.
U.S. ORTHODONTIC CARE, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 3, 2005)

Before BIRCH and DUBINA, Circuit Judges, and SHAPIRO*, District Judge.

_____

* Honorable Norma L. Shapiro, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

PER CURIAM:

Dr. Ronald Parsons, D.M.D., M.S.D. and R.O. Parsons, D.M.D., M.S.D., P.C. (together "Parsons") filed this action against Orthalliance, Inc., f/k/a U.S. Orthodontic Care, Inc ("Orthalliance") for breach of contract and fraud. Orthalliance appeals from the District Court's dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

**FACTS AND PROCEDURAL HISTORY**

The relevant facts are undisputed. Dr. Parsons is a licensed orthodontist and president of Parsons, PC, an orthodontic practice in Georgia. Orthalliance owns the assets and manages the business affairs of orthodontic practices. This litigation arose out of a contract between the parties. During mediation, the parties executed a document setting out certain terms of a proposed settlement. The District Court found it was a binding, enforceable settlement agreement, and dismissed this action as moot. On appeal, Orthalliance contends the document was not a binding, enforceable settlement agreement.

Parsons first entered into a contract with Orthalliance in 1997. The contract provided that Parsons would transfer assets to Orthalliance in exchange for its management services. In 2002, Parsons filed this action alleging Orthalliance was liable for breach of contract and fraud. Orthalliance removed to the District Court

for the Northern Division of Georgia, and counterclaimed for breach of contract and unpaid service fees. Orthalliance then became a wholly-owned subsidiary of Orthodontic Centers of America, Inc. ("OCA"), and OCA assumed control of the litigation.

Orthalliance, OCA and Parsons engaged in mediation, with all parties represented by counsel. On January 30, 2003, a document containing the terms of a settlement ("the Term Sheet")[1] was signed by all parties and the mediator. The four-page, handwritten document contained eleven paragraphs roughly outlining the sale of the Parsons practice to OCA and some unnamed buyer. The sale was to close by July 1, 2003. The document also anticipated a "final settlement agreement" to be executed later:

> 7. The parties will endeavor to complete the documents to effectuate the final terms of the settlement agreement within 30 days after the execution of this terms sheet. In the event the parties fail to complete the final settlement agreement within that time period, the parties agree that Plaintiffs may depose the following five witnesses: Dr. Kubisch, Dr.Schmidt, Dr. Durbin, Dr. Palmisano, and Dr. Pridemore. Defendants will be entitled to re-depose Dr. Parsons.[2]
>
> [...]

---

[1] Parsons referred to the document as "the Mediation Settlement Agreement" in their pleadings, while Orthalliance referred to it as "the Term Sheet." The District Court referred to it as "the Mediation Settlement Terms." We use the phrase "Term Sheet" because the document contains a clause referring to it as a "term sheet."

[2] At the time of the mediation, discovery deadlines had passed.

9. Upon the execution of the settlement agreements, which shall include standard mutual releases, the parties shall dismiss their respective claims with prejudice.

Numerous issues remained unresolved, so the parties continued to discuss the terms of a final settlement agreement. Orthalliance located a potential third party buyer, but Parsons refused to provide the buyer with financial and patient demographic information relating to his practice. Parsons requested that Orthalliance provide a letter of credit on which he could draw if the sale did not close by July 1. The parties negotiated how and when Parsons would receive the full balance of the purchase price, and the consequences if the sale did not close. They attempted to renegotiate some provisions of the Term Sheet to change the structure of the deal from a stock purchase to an asset acquisition. Counsel exchanged written drafts of a final settlement agreement, but the parties failed to reach an agreement within thirty days, as required by Paragraph 7 of the Term Sheet.

On March 12, 2003, the District Court issued a consent order:

The parties having agreed to the underlying terms for settlement, and for good cause shown, it is hereby ORDERED that remaining time limits in the Scheduling Order, including the time for filing all necessary motions, are hereby STAYED to provide the parties with sufficient time in which to prepare and execute the documents necessary for settlement. The parties shall within sixty (60) days of entry of this Order: (1) inform the Court that settlement discussions

4

are ongoing and seek an additional extension of this Court's Order at that time;  (2) file a Stipulation of Dismissal pursuant to Rule 41 of the Federal Rules of Civil Procedure upon successful completion of the settlement documents;  or (3) submit to the Court a revised Scheduling Order outlining the dates by which the parties are to file all remaining motions.

The parties continued to discuss the terms of a final settlement agreement, but negotiations failed, and no settlement agreement was reached.

On July 8, 2003, the District Court issued an order:

It has come to the Court's attention that the parties have not reached a settlement or are unwilling to conclude the settlement. Therefore, the Court **ORDERS** the parties to submit a consolidated pretrial order within twenty (20) days of the entry of this Order.  This case will be placed on the August 11, 2003 trial calendar.

Parsons then moved for dismissal of the action for lack of subject matter jurisdiction, or in the alternative, for leave to amend their complaint to allege breach of the Term Sheet.  Orthalliance, opposing the motion to dismiss, argued that the Term Sheet was not binding or enforceable, and that no final agreement was ever reached.

The District Court applied the contract law of Georgia to the Term Sheet and ruled that it created a binding, enforceable settlement agreement, so that there was no longer any case or controversy.[3]  *See United Airlines, Inc. v. McDonald*,

---

[3] The District Court had subject matter jurisdiction based on the diversity of citizenship of the parties.  Because the parties were from different states, the District Court conducted a

5

432 U.S. 385, 400 (1977) (settlement typically moots a case or controversy). The court held it no longer had subject matter jurisdiction, and granted Parsons' motion to dismiss the action.[4]

**STANDARD OF REVIEW**

We review *de novo* a district court's determination of subject matter jurisdiction under Rule 12(b)(1). *Asociacion De Empleados Del Area Canalera v. Panama Canal Com'n*, 329 F.3d 1235, 1237-1238 (11th Cir. 2003).

**DISCUSSION**

Generally, the settlement of a dispute between the parties renders the case moot. *Local No. 8-6, Oil, Chemical & Atomic Workers International Union v. Missouri,* 361 U.S. 363 (1960); *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 748 (11th Cir. 1991). A case as a whole is not moot if there are still issues in dispute or the settlement is tentative. *University of Texas v. Camenisch*, 451 U.S. 390, 394 (1981); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 465 n.3 (1978). Mootness questions arising out of a putative settlement

---

choice of law analysis and determined that Georgia law applied according to the traditional rule of *lex loci contractus*.

[4] The parties never entered into a stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1). The District Court did not enter an order under Rule 41(a)(2); it could not have done so without the consent of Orthalliance, since Orthalliance had counterclaimed against Parsons before Parsons served the motion to dismiss.

6

should be answered according to the intent of the parties and general contract principles. *Insurance Concepts, Inc. v. Western Life Ins. Co.*, 639 F.2d 1108, 1111-12 (5ᵗʰ Cir. 1981); 13A C. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 3533.2 (2d ed. 1984).

The text of the Term Sheet makes clear the intent of the parties. The Term Sheet contains no release of claims. Paragraphs 7 and 9 merely anticipate additional, future agreements -- most notably a "final settlement agreement," "which shall include standard mutual releases." Paragraph 9 makes the execution of a future settlement agreement a condition precedent to any release. *See Jackson Electric Membership Corp. v. Georgia Power Co.*, 364 S.E.2d 556, 557 (Ga. 1988) ("Such conditions are facts and events, which though subsequent to the making of the contract, are nevertheless precedent to the right of immediate performance.") Paragraph 7, allowing for additional depositions, shows the parties' intent to continue the litigation if no final settlement occurred within thirty days. By dismissing the action, the District Court ignored the intent of the parties and rewrote the contract. *See Piggly Wiggly Southern, Inc. v. Heard*, 405 S.E.2d 478, 480 (Ga. 1991) (courts are not authorized to rewrite contracts). As written, the Term Sheet was too tentative and incomplete to create a final settlement. *See University of Texas*, 451 U.S. at 394; *Coopers & Lybrand*, 437 U.S. at 465 n.3.

7

The parties failed to reach a final settlement after signing the Term Sheet. The parties continued to negotiate numerous material issues, such as the identity of the third party buyer, how and when Parsons would receive the full balance of the purchase price, and the consequences of a failure to close. Several written drafts of a final settlement agreement were exchanged and rejected. These ongoing negotiations and the failure to reach a final settlement demonstrate that the case and controversy remained alive.[5] The District Court retained subject matter jurisdiction and should not have dismissed this action.

**CONCLUSION**

The District Court erred in granting Parsons' motion to dismiss the action for lack of subject matter jurisdiction. **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.[6]

_____

[5] The District Court recognized this by its July 8, 2003 order placing the case on the trial calendar, more than five months after the Term Sheet was signed.

[6] This opinion does not preclude a future settlement or dismissal on other grounds.